UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY C. STEPHENS, | |
| Petitioner, | CIVIL ACTION NO. 1:14-cv-00977 |
| v. | (KANE, J.)<br>(SAPORITO, M.J.) |
| LAWRENCE MALHALLY, Acting Superintendent, et al., | |
| Respondents. | |

## REPORT AND RECOMMENDATION

This proceeding was initiated by a petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, signed and dated by the petitioner, Jeffrey C. Stephens, on May 2, 2014. (Doc. 1, at 27–38). The petition was originally submitted to the United States Court of Appeals for the Third Circuit together with a motion for authorization pursuant to 28 U.S.C. § 2244(b)(2) to file a second or successive habeas petition. (Doc. 1, at 1–4). The Third Circuit declined to authorize a second or successive petition with respect to ineffective assistance of counsel claims asserted in the petition, but found that authorization was unnecessary with respect to Stephens's challenge to a 2013 denial of parole, as this parole-related claim was not available to him at the time of filing his prior habeas

petition in 2008. (Doc. 1-2). The petition was then transferred to this Court for consideration of Stephens's parole-related claim only. At the time of filing, Stephens was incarcerated at SCI Dallas, which is located in Luzerne County, Pennsylvania.

I. STATEMENT OF THE CASE

A. Procedural History

On November 21, 1996, following a jury trial, Stephens was convicted of involuntary deviate sexual intercourse, aggravated indecent assault, and sexual assault; he was acquitted on a separate count of rape by threat of forcible compulsion. *Commonwealth v. Stephens*, Docket No. CP-35-CR-0001297-1996 (Lackawanna County C.C.P.).[1] On November 15, 1999, after his original sentence was vacated under the PCRA, Stephens was resentenced to serve a term of 98 months to 26 years in prison. *Id.* His

---

[1] In addition to the petition, a federal habeas court may take judicial notice of state court records, as well as its own records. *Montanez v. Walsh*, No. 3:CV-13-2687, 2014 WL 47729, at *4 n.1 (M.D. Pa. Jan. 7, 2014); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing this petition, the Court has taken judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Lackawanna County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania, available online at https://ujsportal.pacourts.us/DocketSheets.aspx, as well as its own records.

conviction and sentence have been affirmed on direct appeal and upheld on collateral review in both state and federal courts.

Stephens first became eligible for parole on September 16, 2004, when he had served his aggregate minimum sentence, and his maximum sentence expires on July 16, 2022. (Doc. 16-2, at 1–3). He has been interviewed by the parole board and denied release on parole nine times.

The parole board first interviewed Stephens and denied him parole on June 28, 2004, citing the following reasons for its decision: (a) his "refusal to accept responsibility for the offense(s) committed"; (b) "the recommendation made by the Department of Corrections"; and (c) his "need to participate in and complete additional institutional programs." (*Id.* at 9). The board decided Stephens would be reviewed again in or after June 2006. (*Id.*). The board advised Stephens that it would consider the following factors at the next review: (a) "whether [he] participated in a treatment program for sex offenders/therapeutic community"; (b) "whether [he] received a favorable recommendation for parole from the Department of Corrections"; and (c) "whether [he] maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s)." (*Id.* at 9–10).

The parole board next interviewed Stephens and denied him parole on July 18, 2006, citing the following reasons for its decision: (a) his "minimization/denial of the nature and circumstances of the offense(s) committed"; (b) his "refusal to accept responsibility for the offense(s) committed"; (c) "the negative recommendation made by the Department of Corrections"; (d) his "unacceptable compliance with prescribed institutional programs"; (e) his "need to participate in and complete additional institutional programs"; (f) his "institutional behavior, including reported misconducts or community corrections residency failure"; and (g) his "interview with the hearing examiner and/or board member." (*Id.* at 11). The board decided Stephens would be reviewed again in or after July 2008, "or earlier, if recommended by the Department of Corrections/county prison staff." (*Id.* at 12). The board advised Stephens that it would consider the following factors at the next review: (a) "whether [he] participated in/successfully completed a treatment program for sex offenders (core)"; (b) "whether [he] received a favorable recommendation for parole from the Department of Corrections"; and (c) "whether [he] received a clear conduct record and completed the Department of Corrections' prescriptive program(s)." (*Id.*).

The parole board interviewed Stephens and denied him parole for a third time on July 10, 2008, citing the following reasons for its decision: (a) his "need to participate in and complete additional institutional programs"; and (b) his "interview with the hearing examiner and/or board member." (*Id.* at 13). The board decided Stephens would be reviewed again in or after January 2009. (*Id.*). The board advised Stephens that it would consider the following factors at the next review: (a) "whether [he] successfully completed a treatment program for sex offenders"; (b) "whether [he] received a favorable recommendation for parole from the Department of Corrections"; and (c) "whether [he] maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s)." (*Id.*).

The parole board interviewed Stephens and denied him parole for a fourth time on March 10, 2009, citing the following reasons for its decision: (a) his "need to participate in and complete additional institutional programs"; (b) his "risk and needs assessment indicating [his] level of risk to the community"; (c) "the negative recommendation made by the Department of Corrections"; (d) "reports, evaluations and assessments/level of risk indicates [his] risk to the community"; and (e)

"the negative recommendation made by the prosecuting attorney." (*Id.* at 15). The board decided Stephens would be reviewed again in or after February 2010. (*Id.*). The board advised Stephens that it would consider the following factors at the next review: (a) "whether [he] successfully participated in/successfully completed a treatment program for violence prevention"; (b) "whether [he] received a favorable recommendation for parole from the Department of Corrections"; (c) "whether [he] maintained a clear conduct record"; and (d) a "mental health evaluation to be available at time of review." (*Id.* at 15–16).

The parole board interviewed Stephens and denied him parole for a fifth time on March 23, 2010, citing the following reasons for its decision: (a) "the negative recommendation made by the Department of Corrections"; (b) his "prior unsatisfactory parole supervision history";[2] (c) "reports, evaluations and assessments/level of risk indicates [his] risk to the community"; and (d) "the negative recommendation made by the

---

[2] Stephens apparently had been released on parole from a prior indecent assault conviction and sentence in August 1991, and his parole was subsequently revoked for technical parole violations in February 1992. Stephens was charged with changing residence without the permission of his parole officer, engaging in assaultive behavior, and consuming alcohol. He was recommitted to serve the unexpired portion of his sentence—six months and 14 days. (*See* Doc. 16-2, at 4–8).

prosecuting attorney." (*Id.* at 17). The board decided Stephens would be reviewed again in or after February 2011. (*Id.*). The board advised Stephens that it would consider the following factors at the next review: (a) "whether [he] successfully participated in/successfully completed a treatment program for prescriptive program plan; (b) "whether [he] received a favorable recommendation for parole from the Department of Corrections"; and (c) "whether [he] maintained a clear conduct record." (*Id.*).

The parole board interviewed Stephens and denied him parole for a sixth time on April 7, 2011, citing the following reasons for its decision: (a) his "risk and needs assessment indicating [his] level of risk to the community"; (b) "reports, evaluations and assessments/level of risk indicates [his] risk to the community"; and (c) "the negative recommendation made by the prosecuting attorney." (*Id.* at 19). The board decided Stephens would be reviewed again in or after February 2012. (*Id.*). The board advised Stephens that it would consider the following factors at the next review: (a) "whether [he] maintained a favorable recommendation for parole from the Department of Corrections"; and (b) "whether [he] maintained a clear conduct record." (*Id.*).

The parole board interviewed Stephens and denied him parole for a seventh time on March 20, 2012, citing the following reasons for its decision: (a) his "risk and needs assessment indicating [his] level of risk to the community"; (b) "the negative recommendation made by the Department of Corrections"; (c) "reports, evaluations and assessments/level of risk indicates [his] risk to the community"; and (d) "the negative recommendation made by the prosecuting attorney." (*Id.* at 20). The board decided Stephens would be reviewed again in or after February 2013. (*Id.*). The board advised Stephens that it would consider the following factors at the next review: (a) "whether [he] received a favorable recommendation for parole from the Department of Corrections"; and (b) "whether [he] maintained a clear conduct record." (*Id.*).

The parole board interviewed Stephens and denied him parole for a eighth time on May 3, 2013, citing the following reasons for its decision: (a) his "risk and needs assessment indicating [his] level of risk to the community"; (b) "reports, evaluations and assessments/level of risk indicates [his] risk to the community"; and (c) "the negative recommendation made by the prosecuting attorney." (*Id.* at 22). The board decided Stephens would be reviewed again in or after February 2014. (*Id.*).

The board advised Stephens that it would consider the following factors at the next review: (a) "whether [he] maintained a favorable recommendation for parole from the Department of Corrections"; (b) "whether [he] maintained a clear conduct record"; and (c) "whether [he] completed the Department of Corrections prescriptive program(s)." (*Id.*). This is one of the two parole denials challenged in the instant habeas petition.

The parole board interviewed Stephens and denied him parole for a ninth time on March 19, 2014, citing the following reasons for its decision: (a) his "risk and needs assessment indicating [his] level of risk to the community"; (b) "reports, evaluations and assessments/level of risk indicates [his] risk to the community"; and (c) his "minimization of the nature and circumstances of the offense(s) committed." (*Id.* at 24). The board decided Stephens would be reviewed again in or after November 2014. (*Id.*). The board advised Stephens that it would consider the following factors at the next review: (a) "whether [he] maintained a favorable recommendation for parole from the Department of Corrections"; and (b) "whether [he] maintained a clear conduct record." (*Id.*). This is the second of the two parole denials challenged in the instant habeas petition.

Stephens filed the instant *pro se* federal habeas petition on May 2,

2014.[3] (Doc. 1, at 27–38). The case was transferred to this Court from the Third Circuit on or about May 20, 2014. (*See* Doc. 1-2). The respondents filed their answer to the petition on October 16, 2014. (Doc. 16). Stephens filed a *pro se* reply to the answer on November 3, 2014. (Doc. 17). The petition is therefore ripe for disposition.

Stephens has also filed two motions that remain pending. On November 18, 2014, Stephens filed a motion styled "Motion for Judicial Determination of Capacity and Competence, and, for Immediate Relief," in which he appears to present an alternative argument for his immediate release from prison. (Doc. 18). The respondents filed no response. On December 11, 2014, Stephens filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, in which he appears to contend that he is entitled to default judgment and an immediate release from confinement due to the respondents' failure to respond to the November 18th motion. (Doc. 20). Again, the respondents filed no response. Both motions are ripe for disposition.

---

[3] The petition was received and docketed by the United States Court of Appeals for the Third Circuit on May 8, 2014, but it appears to have been deposited in the prison mail system on May 2, 2014, and thus effectively filed that day. *See* Rule 3(d), 28 U.S.C. foll. § 2254.

**B. Habeas Claims Presented**

The *pro se* petition asserted that Stephens is entitled to relief under 28 U.S.C. § 2254 for the following reasons:

(1) Stephens was denied his Fourteenth Amendment substantive due process rights by the arbitrary denial of parole nine consecutive times; and

(2) Stephens was denied the effective assistance of counsel in trial proceedings because his trial counsel advised him to accept a plea bargain and plead guilty, but failed to anticipate that the parole board would deny Stephens parole multiple times.

This Court lacks jurisdiction to consider Stephens's claim (2), challenging his underlying state court conviction and sentence because the Third Circuit has declined to authorize a second or successive petition under 28 U.S.C. § 2244(b)(2). Stephens's claim (1), challenging recent decisions denying his release on parole, is properly before this Court. (*See* Doc. 1-2 (citing *Benchoff v. Colleran*, 404 F.3d 812, 817 (3d Cir. 2005)).

**II. DISCUSSION**

**A. The Habeas Petition**

In his petition, Stephens contends that his continued detention is unlawful because the parole board's May 2013 and March 2014 decisions are "arbitrary, vindictive, retaliatory, and oppressive," in violation his due process rights under the Fourteenth Amendment to the United States

Constitution.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As a threshold matter, "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 98 (3d Cir. 2006) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)); *see also Wolfe v. Pa. Dep't of Corr.*, 334 F. Supp. 2d 762, 773 (E.D. Pa. 2004). In this case, Stephens claims that, based on his parsing of Pennsylvania statutory language, he has a liberty interest in parole that vested when he satisfied the statutory conditions for parole eligibility upon completion of his minimum sentence in September 2004. (Doc. 17, at 8–13).

It is well settled that neither the United States Constitution nor Pennsylvania state law create a protected liberty interest in a pre-release expectation of parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 10–11 (1979); *Jago v. Van Curen*, 454 U.S. 14, 21 (1981); *Stephens v. Chairman of the Pa. Bd. of Prob. & Parole*, 173 Fed. App'x 963, 965–66 (3d Cir. 2006) (per curiam); *Folk v. Att'y Gen. of Pa.*, 425

F. Supp. 2d 663, 670–71 (W.D. Pa. 2006); *McFadden v. Lehman*, 968 F. Supp. 1001, 1004 (M.D. Pa. 1997); *McCrery v. Mark*, 823 F. Supp. 288, 294 (E.D. Pa. 1993). Absent a protected liberty interest, the petition fails to state a cognizable procedural due process claim. *See Mudric*, 469 F.3d at 98; *Wolfe*, 334 F. Supp. 2d at 773.

Even in the absence of a protected liberty interest, substantive due process forbids "totally arbitrary parole decisions founded on impermissible criteria," such as race or in retaliation for exercising constitutional rights. *Burkett v. Love*, 89 F.3d 135, 139–40 (3d Cir. 1996) (quoting *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980)); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely."). Stephens has not alleged reliance by the parole board upon impermissible criteria such as race or retaliation for the exercise of constitutional rights, but only that the parole board's decisions denying parole were arbitrary insofar as they found him to be a risk to the community. "The relevant level of arbitrariness required in order to find a substantive due process violation

involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" *Hunterson v. DiSabato*, 308 F.3d 236, 246–47 (3d Cir. 2002). "[I]t is a habeas petitioner's burden to establish that the challenged action shocks the conscience[]." *Ralston v. Dep't of Parole & Prob.*, Civil Action No. 12-1844, 2015 WL 1542480, at *4 (W.D. Pa. Apr. 7,2015); *see also Goodman v. McVey*, 428 Fed. App'x 125, 127 (3d Cir. 2011) (per curiam).

In this case, the parole board found Stephens to be unsuitable for parole due to the risk to the community that would be posed by his release. Although Stephens disputes this factual determination, "federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001); *see also Mowatt v. Ebbert*, Civil No. 4:09-CV-2307, 2011 WL 1877639, at *10 (M.D. Pa. Mar. 15, 2011) ("[T]he court will not disturb a parole finding that is supported by a rational basis in the record.") (citing other sources). Here, the parole board's written decisions state the parole board's findings that Stephens poses a risk to the community based on

unspecified "reports, evaluations and assessments," and that he has "minimiz[ed] . . . the nature and circumstances of the offense(s) committed." (Doc. 16-2, at 22, 24). A parole memorandum that accompanied the March 2014 decision provided additional explanation of the parole board's decision, stating that various standardized risk assessment tools indicated that Stephens remained a medium to high risk for sexually reoffending, primarily based on his lack of insight into his sexually assaultive history and his minimization of his offense in preparing a written "inmate's version" of the underlying events. (Doc. 13, at 79). Although Stephens quibbles with this finding, arguing that he cannot be reasonably expected to admit that he is a "rapist" in light of the jury verdict acquitting him of the statutory offense of rape,[4] he has failed to satisfy his burden of that the parole board's eighth and ninth decisions

---

[4] Stephens was acquitted of rape, but he was convicted of involuntary deviate sexual intercourse. As the Pennsylvania courts have observed, the distinctions between the statutory offenses of "rape" and "involuntary deviate sexual intercourse" are few and narrow. *See, e.g., Commonwealth v. Hitchcock*, 565 A.2d 1159, 1161 (Pa. 1989) ("[T]he gravamen [of the crime of involuntary deviate sexual intercourse] is the same as the crime of rape . . . ."); *Commonwealth v. Lee*, 638 A.2d 1006, 1010–13 (Pa. Super. Ct. 1994) (discussing the few distinctions between the two statutory offenses); *Commonwealth v. Baker*, 418 A.2d 693, 694 n.4 (Pa. Super. Ct. 1980) ("[T]he practical distinction between proving rape and involuntary deviate sexual intercourse is minimal.").

denying him release on parole were arbitrary, conscience shocking, or deliberately indifferent.

### B. Motion for Judicial Determination of Capacity and Competence, and, for Immediate Relief

In his motion styled "Motion for Judicial Determination of Capacity and Competence, and, for Immediate Release," Stephens parses various Pennsylvania statutes and argues that either (a) his original prison sentence "was done without statutory authorization and must be vacated and corrected" (*see* Doc. 18, at 7), or, alternatively, (b) the parole board lacks jurisdiction to grant him parole because these statutes vest that authority in the sentencing court alone (*see* Doc. 18, at 12). With respect to his first argument, that the original prison sentence lacked statutory authorization, this Court lacks jurisdiction to consider a challenge to Stephens's underlying criminal sentence under 28 U.S.C. § 2244(b)(2). *See Benchoff*, 404 F.3d at 815–17. With respect to the second argument, that it is the state sentencing court rather than the parole board that is authorized by state law to grant him parole, this "is a purely a question of state law and thus does not fall within the proper scope of § 2254." *Bachman v. Jeffes*, 488 F. Supp. 107, 108 (M.D. Pa. 1980) (citing *Rose v. Hodges*, 423 U.S. 19, 21–22 (1975)).

### C.  Motion for Judgment on the Pleadings

In his motion for judgment on the pleadings, Stephens seeks the entry of default judgment in his favor due to the respondents' failure to file a response to his "Motion for Judicial Determination of Capacity and Competence, and, for Immediate Release," and an attached "affidavit of truth," to which Stephens appears to ascribe some special, but inscrutable, importance. Default judgment is simply not appropriate in habeas cases. *See Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir. 1990) ("The failure to respond to claims raised in a petition for habeas corpus does not entitle the petitioner to a default judgment."); *Aziz v. Leferve*, 830 F.2d 184, 187 (11th Cir. 1987) ("[D]efault judgment is not contemplated in habeas corpus cases . . . ."); *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970) ("Default judgments in habeas corpus proceedings are not available as a procedure to empty State prisons without evidentiary hearings."). Even if it were, despite their silence on these two motions, the respondents here have answered the habeas petition itself. (Doc. 16). *See generally Lee v. Bhd. of Maint. of Way Emps.*, 139 F.R.D. 376, 381 (D. Minn. 1991) ("Where a defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the

policy of allowing cases to be tried on the merits."); *see also Hutton v. Fisher*, 359 F.2d 913, 916 (3d Cir. 1966) (trial on merits preferred to judgment by default).

## III.    RECOMMENDATION

Based on the foregoing, it is recommended that:

1.    The petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

2.    The petitioner's "Motion for Judicial Determination of Capacity and Competence, and, for Immediate Relief" (Doc. 18) be **DENIED**;

3.    The petitioner's motion for judgment on the pleadings (Doc. 20) be **DENIED**; and

4.    The Court decline to issue a certificate of appealability, as the petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated: June 29, 2015          */s Joseph F. Saporito, Jr.*
                              JOSEPH F. SAPORITO, JR.
                              United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY C. STEPHENS, | |
| Petitioner, | CIVIL ACTION NO. 1:14-cv-00977 |
| v. | (KANE, J.)<br>(SAPORITO, M.J.) |
| LAWRENCE MALHALLY, Acting Superintendent, et al., | |
| Respondents. | |

## **NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated June 29, 2015. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

- 2 -

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: June 29, 2015                    */s Joseph F. Saporito, Jr.*
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge